ESTATE OF JOHN SYLVESTER, DECEASED.

[No. 1,291; decided August 16, 1893.]

Accounts of Executor—Delay in Rendering.—When an executor fails to render an account and delays closing the administration for a number of years, he cannot, when he at last files an account in obedience to a citation, urge that objections to the account come too late.

Accounts of Executor—Delay in Contesting.—An heir or legatee who contests an executor's account when it comes up for settlement is not chargeable with laches in not having exercised his right to compel the executor to file his account sooner than he did.

Accounts of Executor—Estoppel Against Executor.—Where an Executor shortly after his appointment files an account wherein he charges himself with certain money and property received as executor, and ten years after, in obedience to a citation, files a second account not charging himself with such money and property, but claiming that they belonged to a partnership composed of himself and the testator, his claim comes too late.

Executor—When Chargeable with Interest on Money Used as His Own.—Where an executor uses money of the estate as his own, he is chargeable with interest thereon; in this case, however, it appearing that the executor did not use the money with any intent to defraud the estate thereof, it is held that justice will be subserved by charging him with simple interest only.

J. D. Sullivan, for the executor.

Blake, Williams & Harrison, for the contestant.

COFFEY, J.   John Sylvester died November 13, 1881, in the city and county of San Francisco, of which he was a resi-dent, and in which he left estate, disposed of by a will admitted to probate December 12, 1881, upon a petition filed by the executor named therein, his brother, Daniel Sylvester, to whom letters testamentary were issued the same day, and under which letters the said executor entered upon his trust and took possession of the property of the estate, and has ever since remained in possession as such executor.

The property, as described in the petition for probate, consisted of $8,259 on deposit in the Bank of California, outstanding debts amounting to about $2,000, three horses and two wagons and harness of the value of $500, and $32.82 on deposit in a savings bank; in all, about $10,791.82.

The will gave all his property to his brother, Daniel Sylvester, in trust to pay to testator's son, Louis, then a minor, $100; to testator's brothers, Balsar, Conrad, William and Henry, one dollar each; after the payment of all testator's debts and bequests, the residue to be divided equally between his wife, Susannah Sylvester, and Maria Sylvester, the wife of his brother Daniel, the executor and trustee; in case of the death of his wife, the son, Louis, should succeed to her share; the executor to act without bonds. The witnesses to the will were J. D. Sullivan (subsequently, and since, and now the attorney for the executor), and W. F. Empey. Mr. Sullivan, as subscribing witness, testified upon the probate of the will; and upon the same occasion the executor named in the will, Daniel Sylvester, testified that the decedent testator left personal property valued at $11,275 within the jurisdiction of the court, and the order admitting the will to probate so found.

On December 28, 1881, it was ordered that notice to the creditors of said decedent, "pursuant to section 1490 of the Code of Civil Procedure," be published once a week for ten weeks. This order was made, entered and filed on the day of its date. It does not appear from the record that any notice was ever published; nor does it appear that any claims were ever presented to or allowed by the court, or that any order of the court was ever made for the payment of any claims, debts or bequests.

On May 29, 1882, there was filed a paper indorsed "Inventory," and signed "Daniel Sylvester, Administrator of the Estate of John Sylvester, Deceased," which, after the title of the court and the estate, was in the following words and figures:

"Inventory of property belonging to the estate of said John Sylvester, deceased, which has come into the hands of the administrator:

"Cash on deposit in the Bank of California......$11,521.75
Three horses, value of two estimated at $150 each      300.00
One of the value of.........................      25.00
Two wagons and harness for the same, valued at
$100 ....................................      100.00
And one valued at...........................      75.00

                                    $12,021.75"

It does not appear that any appraisement was ever made as required by law: Code Civ. Proc., 1444 et seq.

On June 12, 1882, a paper indorsed "Administrator's Account" was filed, and its contents were as follows:

After the title of court and estate:

"Daniel Sylvester, administrator of the estate of John Sylvester, deceased:

"1881.   To cash received as follows, to wit:

                                          Dr.
December 1st.   To cash in bank..............$11,245.00
                To cash collected since the above
                    date ......................      276.75
                To personal property on hand..      500.00

                                          $12,021.75
1881.   By cash paid as follows, to wit:          .   Cr.
        1. Paid to J. D. Sullivan, attorney......$      150.00
        2. Expenses of administration..........      25.00
        3. Cash paid to Geo. Metzger..........   1,100.00
        4. Cash paid J. Burns......:..........      6.50
        5. Cash to physician, Dr...............      200.00
        6. Cash to Norman Graves............      12.50
        7. Funeral expenses, James McGinn....      250.00

                                          $1,744.00
        8. Jas. Henderson ....................      200.00

                                          $ 1,944.00
                    "DANIEL SYLVESTER,
"Administrator of the Estate of John Sylvester, Deceased."

On June 16, 1882, an order was made, entered and filed, appointing Friday, June 30, 1882, for the settlement of the account above transcribed.

It does not appear that said account was settled on said day so appointed, but there is found among the papers a blank form, partly filled in, dated July 17, 1882, which recites that Daniel Sylvester, administrator, having on the thirtieth day of June, 1882, rendered for settlement his account, and it coming up for settlement, it is ordered that the account be and is settled and allowed and approved. This form of order lacks the signature of the judge. The written part is in the same handwriting as the account, and was evidently prepared by the same person for the judge's signature.

No further proceedings appear to have been had in said estate until the sixth day of April, 1892, when Susannah Sylvester, widow of the decedent testator, and one of the residuary legatees named in the will, and as such interested therein, prayed this court for a citation compelling said executor forthwith to file a full and final account of his administration of said estate, whereupon the court ordered citation to issue, and the same did issue upon the same day.

In apparent obedience to this citation, there was filed on April 18, 1892, a paper indorsed "Second Account of Executor," which recited that "the whole estate which has come to hands of executor, to wit:

"An interest in the partnership existing between the said deceased and the undersigned executor as per inventory this day filed herein.

"1881.                            Cr.

| | | |
|---|---|---:|
| Dec. 15. | By cash paid J. D. Sullivan.........$ | 150.00 |
| | Cash expenses of administration..... | 25.00 |
| Nov. 15. | To Odd Fellows' Cemetery Association | 200.00 |
| Dec. 12. | To Daily Report, advertising........ | 10.00 |
| Nov. 21. | To Dr. Scott, medical attendance.... | 80.00 |
| Nov. 3. | To Dr. Chismore, medical attendance. | 130.00 |
| 1882. | | |
| June 12. | To J. Henderson ................. | 12.50 |
| | To Jas. McGinn, funeral........... | 275.00 |

To cash paid to Susannah Sylvester,
      the widow, and Louis Sylvester, the
      only son .......................      3,000.00"

. On the same day, April 18, 1892, there was filed what purported to be a "Report of Administration by Executor," which recited that at the time of the death of said deceased, and for some time prior thereto, said deceased was engaged in the cattle butchering business in said city and county as a partner of this affiant; that the only property left by said deceased consisted of an interest in said business; that the only property belonging to the said partnership is described in the inventory this day filed herein; that after the death of the said deceased the executor, as surviving partner, continued for some time to conduct the said business, and, in conducting the same, paid a number of claims contracted by the said partnership before the death of said deceased, including the claim of James Duncan for the sum of $900. and the claim of George Metzger for the sum of $1,100, and also other claims against the said partnership; that the claims of the Odd Fellows' Association for the sum of $350, and the claim of G. V. Metzger for the sum of $1,100, have been presented to the executor and allowed by him, and filed herein on the twentieth day of July, 1882.

It is not stated, and it does not appear, that the claims mentioned were ever presented to the court, and it is the fact that they were not approved by the court.

On the same day, April 18, 1892, there was filed a paper entitled "Amended Inventory of Estate of said Deceased," which stated that "the whole of the estate of said deceased at the time of his death consisted of an interest as partner in a cattle butchering business conducted by said deceased and the executor as partners. The said John Sylvester invested in said business the sum of $1,100, and the executor the sum of $8,000. There was no time mentioned during which the said partnership should continue; but the profits thereof were to be divided between the partners in proportion to the amount invested by each. At the time of the death of said deceased the said partnership was the owner of the following property:

"Cash on deposit in the Bank of California......$11,521.75
Three horses; two horses; harness."

This "Amended Inventory" was verified in usual form.

On April 30, 1892, Susannah Sylvester, the widow, and one of the heirs at law and residuary legatees as aforesaid of deceased, filed a contest and exceptions to the account filed April 18, 1892, upon the following grounds:

1. That the executor did not charge himself with the cash sum of $11,521.75, received by him, belonging to said estate, as shown by the inventory of said estate filed herein on the twenty-ninth day of May, 1882, or with any of the other property of the said estate mentioned in said inventory.

2. That the executor did not in said account—"Second Account"—charge himself with the sum of $10,077.75, the balance of cash in his hands belonging to said estate on June 12, 1882, as shown by the account filed by him on that day.

3. That the executor did not, in said "Second Account," charge himself with the proceeds of any settlement or liquidation of the partnership interest therein mentioned.

4. That the executor did not, in said account, charge himself with any interest upon any of the money received by him belonging to said estate, whereas all of such money so received by him, except such portion, if any, as may have been expended by him in the payment of proper charges against said estate, was, as believed and alleged, appropriated by him to his own use, and he is chargeable with interest thereon, at legal rate, compounded annually.

5. That the executor, in said "Second Account," improperly claimed credit for disbursements for which he produced no voucher.

6. The contestant further objected to the item of $3,000, for which credit is claimed in said account, as cash paid to contestants Susannah and Louis Sylvester, upon the ground that, so far as the same was made up of money paid to Louis, it was not a proper charge against the estate, and upon the further ground that no such sum of money, and no sum of money whatever in excess of the sum of $710, has ever been paid to said contestant.

7. Contestant finally contested the item of the claim of the Odd Fellows' Association, $350, and G. V. Metzger for

the sum of $1,100, as mentioned in the report accompanying said "Second Account," as not proper charges against the said estate.

After many days of trial upon the said "Second Account" and the exceptions, the same were submitted for the court's judgment.

Each of the respective counsel—Edward C. Harrison, Esq., for contestant, and Jeremiah D. Sullivan, Esq., for executor —presented his view in writing of what he considered the result of the evidence and proof. These views are widely variant and impossible of reconcilement. The executor claims that the estate is in debt to him, and that he, a man of acknowledged integrity and standing in the community, is the victim of a good heart, of unbounded confidence in his own kindred, giving them money when they needed it, and now, that he has refused to pay any further, they have brought this proceeding. To "pay" implies obligation and indebtedness, and if the executor owed nothing to contestant he has used an inapt term.

Executor's counsel asserts that "the staleness of this claim of contestant is an argument against it," and the counsel exclaims that "it is inconceivable how she should have allowed this matter to go for ten years without a settlement." This is a curious contention for so competent a counsel in this forum, and one who has been, from the inception of the administration of this estate, continuously the attorney of record for the executor. The record discloses that, so far from culpability attaching to contestant, the executor fell far short of his duty in not closing up the estate within a reasonable period and liquidating the affairs of the partnership alleged to have subsisted between him and the deceased. At any rate, staleness of claim of contestant is a novel plea in defense of a delinquent executor.

It might be said, rather, that his allegation that the estate is partnership assets savors of staleness, coming ten years after his petition for probate, proof upon probate, first "Inventory," and first account, in all of which the property is treated as the personal property and assets of the deceased, John Sylvester, and no suggestion of partnership interest is made. It is too late now, it seems to me, when his adminis-

tration is challenged, and when he is by compulsory process brought into court, to set up a claim of partnership as to the assets returned in his first inventory and first account. I am convinced that he was correct when he made his first inventory and account, which, if it had received the approval of the judge, would have concluded him at this time, and that his present plea is an afterthought designed to defeat contestant's claim.

It was the duty of the executor to proceed promptly to administer the estate, and he has shown no valid legal excuse for his dilatoriness, nor can he escape censure for his own laches by accusing contestant of negligence in prosecuting her right to a settlement, for manifestly she must have relied upon him to discharge his duty according to law. But, nevertheless, as there is so much that is obscure to the investigator in this class of cases, I am disposed to view as leniently as possible the conduct of the executor, and to give him the benefit of any and every doubt that may arise upon the evidence, as I do not wish to inflict a penalty, but to secure, if possible, what is justly due to the heirs and legatees.

As a conclusion, from my examination, I find that the total amount of money received by the executor belonging to the estate was $12,021.75; that he should be allowed as paid out, according to the statement in contestant's statement of account, including payment to widow of $710, as proved, $3,692.50; that he should be allowed one-half judgment in Cockburn v. Sylvester (and of this, although I allow it, I have had very serious doubts, and still retain them, but conclude in favor of the allowance), $1,956.15.

As to interest upon the balance to be computed, I think, all things considered, justice would be served in this case by the allowance of simple interest, and the account when so stated may be settled.

---

The Principal Case was Affirmed in 105 Cal. 189, 38 Pac. 648.

An Administrator Who Accounts for Money as the property of the estate of his intestate cannot afterward be heard to say that it was held by another in trust for certain of the heirs, and that he collected it under a power of attorney for them: Estate of Edward Ford, 2 Cof. Pro. Dec. 342.